IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

THURMAN HARVEY HINES,

                **Plaintiff,**

v.                                              **Case No. 19-CV-215-JFH-SPS**

JOE ALLBAUGH, et al.,

                **Defendants.**

**OPINION AND ORDER**

Plaintiff is a pro se probationer in the custody of the Oklahoma Department of Corrections ("DOC"). He was incarcerated at Davis Correctional Facility ("DCF") in Holdenville, Oklahoma, from January 25, 2017, until he was transferred to Oklahoma State Penitentiary ("OSP") in McAlester, Oklahoma, on or about September 6, 2018 [Dkt. No. 73 at 5]. He brought this action under the authority of 42 U.S.C. § 1983, seeking monetary and injunctive relief for alleged constitutional violations during his incarceration. The remaining defendants are Joe Allbaugh, Former DOC Director, and the following DCF Officials ("DCF Defendants"): James Yates, Warden; Ernesto Martinez, Unit Manager; Mark Gentry, Assistant Warden; FNU A. Perez, Deputy Warden; Terry Underwood, Grievance/ Misconduct Coordinator; Glenn Robinson, Disciplinary Hearing Officer; Brandi Sipes, Correctional Counselor; Key Key, Disciplinary Coordinator; FNU D. Berry, Correctional Counselor; FNU Earnest, Correctional Officer; Keith Brown, Chief of Security; FNU Bailey, Case Manager; and FNU Peltier, Senior Officer. The Court has before it for consideration Plaintiff's amended complaint [Dkt. No. 13]; special reports prepared by Defendant Allbaugh [Dkt. No. 71] and the DCF Defendants [Dkt. No. 73] at the direction of the

Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); the defendants'
motions to dismiss [Dkt. Nos. 72, 74); and Plaintiff's response to the motions [Dkt. No. 76].

**Plaintiff's Allegations**

Plaintiff's amended complaint is difficult to read and understand, however, he apparently
is alleging the following violations of his constitutional rights by DOC and DCF officials:

**Claim 1:**  Plaintiff claims his First and Fourteenth Amendment rights were violated. After
he filed several prison grievances and a civil action, he was charged with false misconducts and
was not given impartial disciplinary officers or hearings.  He also allegedly was deprived of
cleaning supplies, pens, paper, and copies, and he was unable to meet deadlines.  In addition, he
claims he was held in permanent disciplinary segregation and transferred to higher security.  These
incidents allegedly occurred at DCF Fox Unit from September 2017 to September 2018.  [Dkt.
No. 13 at 5].

**Claim 2:**  Plaintiff claims his Eighth Amendment rights were violated by the denial of
cleaning supplies and hygiene items while he was confined in a dirty cell in the DCF Fox Unit.
These incidents allegedly occurred from September 2017 to September 2018.  *Id*.

**Claim 3:**  Plaintiff asserts his Eighth Amendment rights and his "conspiracy against" rights
were violated at DCF in January 2018.  He allegedly was sprayed with pepper spray after Officer
Proctor called him a child molester where other inmates could hear.  Officers Proctor and Epperly
also allegedly filed false reports against him, and he was found guilty of the misconducts.  Plaintiff
further claims the defendants failed to protect him.  *Id*. at 6.

**Claim 4:**  Plaintiff claims his Eighth Amendment and "conspiracy against" rights were

2

violated at DCF when officers tried to force him into a cell with a cellmate whom Plaintiff feared. In an attempt to cover up the placement, Plaintiff was sprayed with pepper spray and physical force was used on him.  Plaintiff then was given a misconduct and transferred to OSP, a higher-security facility.  These incidents allegedly occurred between May and September of 2018. *Id.*

Claim 5:  Plaintiff claims his Eighth Amendment rights were violated by a use of force at DCF.  An officer allegedly overheard Plaintiff's cellmate yelling at Plaintiff and witnessed an assault on Plaintiff.  When the officer directed the inmates to stop fighting, they did so, but the officer pepper-sprayed them anyway.  Plaintiff did not provide a date of occurrence for this claim. *Id*. at 12.

Claim 6:  Plaintiff claims the defendants violated his First, Eighth, and Fourteenth Amendment rights, and he was subjected to wrongful detention at DCF.  The defendants allegedly made an agreement to keep Plaintiff on the Fox Unit indefinitely through false misconducts. Plaintiff did not provide a date of occurrence related to this claim.  *Id*.

Claim 7:  The defendants allegedly violated Plaintiff's First and Fourteenth Amendment rights at DCF by issuing him three false misconducts and finding him guilty of all three, in violation of DOC policy and in order to have him transferred to a higher-security facility in retaliation.  His property was confiscated, and Plaintiff was transferred to OSP because of his assault on an officer.  These incidents allegedly occurred from September 3, 2018, to September 6, 2018.  *Id*. at 13.

Claim 8:  Plaintiff alleges his Eighth and Fourteenth Amendment rights were violated at DCF by his reclassification and denial of access to rehabilitative programs that yield earned credits

toward completion of his sentence.  Plaintiff was advised either that he was not eligible, or that he should confer with the unit team.  Also, his Requests to Staff were denied or not answered, or he was denied forms.  In OSP maximum security, he was demoted from Earned Credit Level 4.  *Id.*

**Claim 9:**   Plaintiff asserts that in August 2018 his First, Eighth, and Fourteenth Amendment rights were violated at DCF by the defendants' failure to protect him.  Plaintiff allegedly was ordered to be placed in cells with violent inmates, and he eventually was assaulted. Officers Proctor and Wyman remained employed after pepper-spraying inmates for unjust causes and filing false reports.  *Id.* at 14.

**Claim 10:**   Plaintiff claims that from November 2018 to August 2019, his First, Eighth, and Fourteenth Amendment rights were violated at DCF and OSP.  He allegedly suffered intentional or negligent infliction of emotional distress from the overwhelming violations of constitutional rights and abuse of authority.  His mental suffering and resulting physical symptoms allegedly were so severe that he required mental health medication and therapy.  Plaintiff, however, has not named the defendants who allegedly were responsible for his emotional distress.  *Id.*

**Claim 11:**   From November 2018 to August 2019, Plaintiff's First and Fourteenth Amendment rights allegedly were violated at DCF and OSP, when Defendants Underwood, Yates, Perez, and Gentry agreed to deny an emergency or sensitive grievance.  Defendants Underwood, Yates, Perez, Berry, and Gentry, along with Officer Barly, agreed to state that Plaintiff assaulted an officer in order to transfer Plaintiff to OSP.

**Standard of Review**

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint also must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). With these standards in mind, the Court turns to the merits of the defendants' motions.

**Defendant Joe Allbaugh**

Former DOC Director Joe Allbaugh has filed a motion to dismiss, alleging among other things that he did not personally participate in any constitutional violation [Dkt. No. 72]. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("[P]ersonal participation in the specific constitutional violation complained of is essential."). Supervisory status by itself is not sufficient to support liability under § 1983. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). *See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

Plaintiff alleges Defendant Allbaugh violated his constitutional rights when he failed to respond favorably to Plaintiff's administrative grievances and when he was involved in Plaintiff's retaliatory transfer from DCF to OSP.

> Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence. *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir.1992). "[S]upervisory liability requires 'allegations of personal direction or of actual knowledge and acquiescence.'" *Id.* at 1400 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)).

*Langley v. Adams County*, 987 F.2d 1473, 1481 (10th Cir. 1983). Furthermore, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by the plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted).

Regarding Plaintiff's conclusory claim of his alleged unconstitutional transfer from DCF to OSP, "the Due Process Clause . . . [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). *See also Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (holding that an inmate

6

"has no justifiable expectation that he will be incarcerated in any particular prison within a State").

After careful review, the Court concludes that Defendant Allbaugh's motion to dismiss [Dkt. No. 72] should be **GRANTED** for Plaintiff's failure to establish Allbaugh's personal participation in the alleged constitutional violations.

**DCF Defendants**

The DCF Defendants allege, among other things, that Plaintiff failed to exhaust the administrative remedies for any of his claims against them.  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed.  *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001).   "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).   In deciding a motion to dismiss based on nonexhaustion, the Court can consider the administrative materials submitted by the parties.  *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

According to DOC Offender Grievance Process OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff ("RTS") to the appropriate staff member

within seven calendar days of the incident, alleging only one issue or incident per form.  If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the reviewing authority, asserting only the issue of the lack of response to the RTS.  If the complaint is not resolved after the response to the RTS, the offender then may file a grievance, attaching the RTS with the response from the staff member.  If the grievance also does not resolve the issue, the inmate may appeal to the DOC Administrative Review Authority (ARA), Personal Identity ARA, or Medical ARA, whichever is appropriate.  The administrative process is exhausted only after all of these steps have been taken.  [Dkt No. 74-1 at 7-15; Dkt. No. 74-2 at 7-16].

This policy also instructs that if the inmate does not follow instructions as explained in the policy provision and on the grievance forms, the grievance may be returned to him unanswered for proper completion.  If the inmate is allowed to resubmit the grievance, he must properly resubmit the grievance within 10 calendar days of receipt.  [Dkt. No. 74-1 at 12; Dkt. No. 74-2 at 12].  The continued failure to follow instructions may result in restrictions being imposed on the inmate.  [Dkt. No. 74-1 at 18; Dkt. No. 74-2 at 18].

The DOC Grievance Policy also outlines the proper process for filing emergency or sensitive grievances.  Grievances may be submitted directly to the reviewing authority without using the informal resolution process when the complaint is of a sensitive nature or when substantial risk of personal injury, sexual assault, or other irreparable harm exists.  The policy defines an emergency grievance as "one in which the complainant alleges irreparable harm or personal injury will occur and which the grievance process will be unable to address in a timely,

preventive manner." The word "emergency" must be written at the top of the grievance before submission. The policy also directs that upon receipt of a grievance marked "emergency" or "sensitive," the reviewing authority will have 24 hours to determine if it is in fact an emergency or sensitive grievance. If so, an expedited review will be conducted, and a response provided to the inmate within 48 hours of receipt, excluding weekends and holidays. [Dkt. No. 74-1 at 16-17; Dkt. No. 74-2 at 16-17]. The DCF Defendants assert that if the submission is determined not to be of an emergency nature, it will be returned unanswered, and the inmate will be notified that he must utilize the standard process.

The DCF Defendants have submitted an affidavit by Terry Underwood, the DCF Grievance Coordinator. Ms. Underwood states that she made a diligent search of the facility's grievance records related to Plaintiff, some of which are illegible or difficult to decipher. To the best of her ability to review, however, Plaintiff's grievance allegations appear to concern issues of "false misconducts, conditions of confinement, retaliation for filing grievances and lawsuits, failure to review and consider video, excessive force, retaliation, and restricted access to the law library." [Dkt. No. 74-4 at 2-3]. Although Plaintiff had accesses to the administrative remedies process, he repeatedly failed to follow it properly. *Id*. at 12. "None of his grievance submissions during the applicable time period were properly prepared, submitted, and appealed through the DOC Administrative Review Authority for exhaustion of administrative remedies." *Id.*

The grievance records indicate the following relevant grievance submissions by Plaintiff:

**Grievance No. 2017-1001-00224-G** was submitted on September 8, 2017, as an emergency or sensitive grievance and concerned an officer on Plaintiff's pod who told the inmates

to prepare for the count.  The officer then shut Plaintiff's cell door, denying him access to ice and the microwave, when other inmates were not restricted.  The grievance was returned unanswered on September 11, 2017, because it was not of an emergency or sensitive nature.  Plaintiff was allowed ten days to correct and resubmit the grievance, however, he failed to do so.  [Dkt. No. 74-3 at 2-4].

Grievance No. 2017-1001-00225-G was submitted on September 8, 2017, as an emergency or sensitive grievance, alleging another inmate threatened to beat Plaintiff and called him a child molester.  Plaintiff denied being a sex offender, however, the other inmate said Defendant Officer Bailey had looked up his convictions.  Bailey allegedly wanted all sex offenders to be beaten up or removed from her unit.  Plaintiff's grievance requested proper training, supervision, and discipline of officers.  The grievance was answered by the warden on September 12, 2017, and relief was partially granted.  The matter was turned over to the facility investigator for further investigation, and the reviewing authority would see that staff were properly trained. The request for staff discipline was denied, because it did not present a grievable issue.  Plaintiff did not appeal to the DOC ARA.  [Dkt. No. 74-3 at 5-8].

Grievance No. 2017-1001-00249-G was submitted on October 4, 2017, as an emergency or sensitive grievance related to copies, discovery deadlines, legal research, and staff training, supervision, and discipline.  The grievance was returned unanswered on October 4, 2017, because it was not of an emergency or sensitive nature.  Plaintiff was allowed ten days to correct and resubmit the grievance, however, he failed to do so.  [Dkt No. 74-3 at 9-12].

**Grievance No. 2017-1001-00250-G** was submitted on October 4, 2017, as an emergency or sensitive grievance related to cell conditions and the training, supervision, and discipline of staff.  The grievance was returned unanswered on October 4, 2017, because it was not of an emergency or sensitive nature.  Plaintiff was allowed ten days to correct and resubmit the grievance, however, he failed to do so.  [Dkt. No. 74-3 at 13-16].

**Grievance No. 2017-1001-00251-G** was submitted on October 4, 2017, as an emergency or sensitive grievance regarding the handling of Plaintiff's property.  The grievance was returned unanswered on October 4, 2017, because it was not of an emergency or sensitive nature.  Because of Plaintiff's continued abuse of the grievance process, he was officially warned that further abuses would result in grievance restriction.  Plaintiff was allowed ten days to correct and resubmit the grievance, however, he failed to do so.  [Dkt. No. 74-3 at 17-20].

**Grievance No. 2017-1001-00255-G** was submitted on October 9, 2017, as an emergency or sensitive grievance related to issues of copies of legal materials and complaints of inadequate training, supervision, and discipline of staff.  The grievance was returned unanswered on October 11, 2017, because it was not of an emergency or sensitive nature. Plaintiff was allowed ten days to correct and resubmit the grievance, however, he failed to do so.  [Dkt. No. 74-3 at 21-24].

**Grievance No. 2017-1001-00261-G** was submitted on October 16, 2017, as an emergency or sensitive grievance requesting that unconstitutional disciplinary practices be stopped.  The grievance was returned unanswered on October 17, 2017, because it was not of an emergency or sensitive nature.  In addition, the grievance concerned a non-grievable issue, and Plaintiff was on grievance restriction but did not include the proper documentation.  Plaintiff was allowed ten days

11

to correct and resubmit the grievance, however, he failed to do so.  [Dkt. No. 74-2 at 25-28].

**Grievance No. 2017-1001-00262-G** was submitted on October 16, 2017, as an emergency or sensitive grievance related to Plaintiff's disciplinary proceedings.  The grievance was returned unanswered on October 17, 2017, because it was not of an emergency or sensitive nature, and an answered RTS was not attached.  In addition, Plaintiff was on grievance restriction but did not include the proper documentation.  Plaintiff was allowed ten days to correct and resubmit the grievance, however, he failed to do so.  [Dkt. No. 74-3 at 29-32].

**Grievance No. 2017-1001-00263-G** was submitted on October 16, 2017, as an emergency or sensitive grievance concerning a misconduct Plaintiff received and his Level.  He asked to have the misconduct destroyed, to be provided with a bed on D-North, and for adequate training, supervision, and discipline regarding the reporting of incidents.  The grievance was returned unanswered on October 16, 2017, because he had raised non-grievable issues, he was on grievance restriction and had not included the proper documentation, and the grievance was not of an emergency or sensitive nature.  Plaintiff was allowed ten days to correct and resubmit the grievance, however, he failed to do so.  [Dkt. No. 74-3 at 33-36].

**Grievance No. 2017-1001-00268-G** was submitted on October 24, 2017, as an emergency or sensitive grievance and was related to Plaintiff's needing a pen.  The grievance was returned unanswered on October 24, 2017, for Plaintiff's failure to attach an answered RTS and because Plaintiff was on grievance restriction and proper documentation was not included.  It also was determined that the grievance was not of an emergency or sensitive nature.  Plaintiff was allowed ten days to correct and resubmit the grievance, however, he failed to do so.  [Dkt. No. 74-3 at 37-

40].

**Grievance No. 2017-1001-00269-G** was submitted on October 24, 2017, as an emergency or sensitive grievance and concerned Plaintiff's obtaining additional grievance forms upon request. The grievance was returned unanswered on October 24, 2017, for Plaintiff's failure to attach an answered RTS and because Plaintiff was on grievance restriction and proper documentation was not included.   In addition, it was determined that the grievance was not of an emergency or sensitive nature.   Plaintiff was allowed ten days to correct and resubmit the grievance, however, he failed to do so.  [Dkt. No. 74-3 at 41-44].

**Grievance No. 2017-1001-00270-G** was submitted on October 24, 2017, as an emergency or sensitive grievance concerning property issues.   The grievance was returned unanswered on October 24, 2017, because it raised non-grievable issues, and Plaintiff was on grievance restriction but had failed to include the proper documentation.   In addition, the grievance was not of an emergency or sensitive nature.  [Dkt. No. 74-3 at 45-47].

**Grievance No. 2017-1001-00293-G** was submitted on November 14, 2017, as an emergency or sensitive grievance and concerned Plaintiff's claim that his misconduct had not been handled properly.  The grievance was returned unanswered on November 14, 2017, because it did not raise a grievable issue.  [Dkt. No. 74-3 at 48-51].

**Grievance No. 2017-1001-00294-G** was submitted on November 14, 2017, as an emergency or sensitive grievance, claiming Plaintiff's misconduct was not properly investigated. The grievance was returned unanswered on November 15, 2017, because it did not raise a grievable issue.  [Dkt. No. 74-3 at 52-54].

**Grievance No. 2017-1001-00295-G** was submitted on November 14, 2017, as an emergency or sensitive grievance, asserting Plaintiff was being denied copies in retaliation for his filing grievances. This grievance was denied on November 16, 2017, because Plaintiff's request for copies had not been properly made. Plaintiff appealed the decision to the DOC ARA, however, the appeal was returned unanswered because Plaintiff was on grievance restriction and had not included the proper documentation. He was given ten days to correct and resubmit the appeal but did not do so. [Dkt. No. 74-3 at 55-57].

**Grievance No. 2017-1001-00296-G** was submitted on November 14, 2017, as an emergency or sensitive grievance and concerned Plaintiff's request for the staff to be disciplined. The grievance was returned on November 15, 2017, because it raised a non-grievable issue. [Dkt. No. 74-3 at 58-61].

**Grievance No. 2017-1001-00299-G** was submitted on November 14, 2017, and concerned Plaintiff's complaint that the law library supervisor directed him to place his requests into offender mail instead of handing them directly to her. The grievance was returned unanswered on November 15, 2017, because it did not include an answered RTS, and Plaintiff was on grievance restriction but had filed to include the proper documentation. Plaintiff was allowed ten days to correct and resubmit the grievance, however, he failed to do so. [Dkt. No. 74-3 at 62-64].

**Grievance No. 2017-1001-00300-G** was submitted on November 14, 2017, complaining that Plaintiff has not received a response to an RTS. The grievance was returned unanswered on November 15, 2017, because Plaintiff was on grievance restriction and had not included the proper documentation. Plaintiff was granted ten days to correct and resubmit the grievance, but he failed

14

to do so.  [Dkt. No. 74-3 at 65-67].

**Grievance No. 2017-1001-00309-G** was submitted on November 20, 2017, as an emergency or sensitive grievance concerning hygiene supplies.  The grievance was returned unanswered on November 21, 2017, because it was not of an emergency or sensitive nature, Plaintiff had failed to attach an answered RTS, the grievance was illegible, and Plaintiff failed to provide proper documentation regarding his grievance restriction.  Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so.  [Dkt. No. 74-3 at 68-71].

**Grievance No. 2017-1001-00310-G** was submitted on November 20, 2017, as an emergency or sensitive grievance related to a video for a disciplinary proceeding.  The grievance was returned unanswered on November 21, 2017, because it was illegible and the issue was not grievable as it related to a misconduct.  [Dkt. No. 74-3 at 71-74].

**Grievance No. 2017-1001-00311-G** was submitted on November 20, 2017, as an emergency or sensitive grievance, claiming Plaintiff's grievance to Defendant Warden James Yates was erroneously returned by J. Morgan, the warden's assistant.  Plaintiff additionally asserted that no relief was available through the grievance process, because he was seeking monetary damages and staff discipline. The grievance was returned unanswered on November 21, 2017, because an answered RTS was not attached, the RTS did not match the issue on the grievance, the grievance was not legible, it raised more than one issue or incident, and it was not of an emergency or sensitive nature. Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so. [Dkt. No. 74-3 at 75-98].

**Grievance No. 2018-1001-00011-G** was submitted on January 30, 2018, as an emergency or sensitive grievance, regarding Plaintiff's claim that he had not had a shower for six weeks, and he had no hygiene items or clean clothing.  The grievance was returned unanswered on January 31, 2018, because it was not of an emergency or sensitive nature, property issues at private prisons are not grievable under DOC Grievance Process OP-090124, and proper documentation related to Plaintiff's grievance restriction was not included.  Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so.  [Dkt. No. 74-3 at 99-106].

**Grievance No. 2018-1001-00012-G** was submitted on January 30, 2018, as an emergency or sensitive grievance related to Plaintiff's being sprayed with OC spray and his claim that he was issued a false incident report and a false misconduct.  The grievance was returned unanswered on January 31, 2018, because Plaintiff was on grievance restriction but had not included the proper paperwork.  Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so.  [Dkt. No. 74-3 at 107-111].

**Grievance No. 2018-1001-00057-G** was submitted on April 5, 2018, as a sensitive grievance, claiming that Defendant Berry retaliated against Plaintiff.  The grievance was returned unanswered on April 9, 2018, because requests for disciplinary action against staff cannot be addressed through the grievance process, and Plaintiff was on grievance restriction and had not included the proper paperwork.  Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so.  [Dkt. No. 74-3 at 112-124].

**Grievance No. 2018-1001-00058-G** was submitted on April 5, 2018, as an emergency or sensitive grievance concerning interference with his legal deadlines.  The grievance was returned

16

unanswered on April 9, 2018, because an answered RTS was not attached, requests for disciplinary action against staff are not addressed through the grievance process, and Plaintiff had not submitted the proper paperwork required by his grievance restriction.  Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so.  [Dkt. No. 74-3 at 125-135].

Grievance No. 2018-1001-000204-G was submitted on August 24, 2018, as an emergency/sensitive grievance, claiming Plaintiff was not provided pens or legal copies.  The grievance was returned unanswered on August 24, 2018, because it was not of an emergency or sensitive nature, it was illegible, it did not request specific relief, it concerned more than one issue or incident, and Plaintiff had not submitted the proper paperwork required by his grievance restriction.  Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so.  [Dkt. No. 74-3 at 136-141].

Grievance No. 2018-1001-000205-G was submitted on August 24, 2018, as an emergency/sensitive grievance, claiming Plaintiff was not provided with paper, pens, and copies of documents.  It was returned unanswered on August 24, 2018, because it was illegible and not of an emergency nature, it did not request specific relief, it concerned more than one issue or incident, and Plaintiff had not submitted the proper paperwork required by his grievance restriction.  Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so.  [Dkt. No. 74-3 at 147-152].

Grievance No. 2018-1001-000206-G was submitted on August 24, 2018, as an emergency/sensitive grievance concerning Plaintiff's alleged attempt to obtain a signed inmate request.  It was returned unanswered on August 24, 2018, because it was illegible and not of an

17

emergency nature, it did not request specific relief, it concerned more than one issue or incident, and Plaintiff had not submitted the proper paperwork required by his grievance restriction. Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so. [Dkt. No. 74-3 at 142-146].

**Grievance No. 2018-1001-000207-G** was submitted on August 24, 2018, as an emergency/sensitive grievance, claiming Plaintiff's case manager pretended to be concerned about his submissions. The grievance was returned unanswered on August 24, 2018, because it was illegible and not of an emergency nature, it did not request specific relief, it concerned more than one issue or incident, and Plaintiff had not submitted the proper paperwork required by his grievance restriction. Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so. [Dkt. No. 74-3 at 153-158].

**Grievance No. 2018-1001-000208-G** was submitted on August 24, 2018 as an emergency/sensitive grievance, claiming Plaintiff spoke to Assistant Warden Gentry about Plaintiff's deadlines and that he needed pens, paper, legal copies, and mailing. The grievance was returned unanswered on August 24, 2018, because it was illegible and not of an emergency nature, it did not request specific relief, it concerned more than one issue or incident, and Plaintiff had not submitted the proper paperwork required by his grievance restriction. Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so. [Dkt. No. 73-4 at 159-164].

**Grievance No. 2018-1001-000214-G** was submitted on August 30, 2018 as an emergency/sensitive grievance, claiming Plaintiff had been denied recreation and showers. It was returned unanswered on August 30, 2018, because it was illegible, not of an emergency nature, it

18

did not include the specifics of the incident, and Plaintiff had not submitted the proper paperwork required by his grievance restriction. Plaintiff was granted ten days to correct and resubmit the grievance, but he failed to do so. [Dkt. No. 74-3 at 165-170].

After careful review of the record, it is clear to the Court that Plaintiff failed to exhaust any of the grievances he submitted at DCF. He claims in his response to the defendants' motions [Dkt. No. 76] that under the "emergency or sensitive" procedures, an inmate does not have to follow the normal grievance process. Plaintiff's numerous grievances, however, were determined not to be of an emergency or sensitive nature. He also asserts that several of his RTSs were not stamped and filed in the grievance log by the DCF law library supervisor, and he never received responses to several of his RTSs. He further contends the defendants directed other prison officials to find his grievances did not present emergency or sensitive issues. He thus argues that the administrative remedies for his claims were unavailable.

"Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted). Because Plaintiff's arguments regarding his access to administrative remedies are vague and conclusory, and he has provided no specific evidence in support of these allegations, the Court finds the DCF Defendants' motion to dismiss [Dkt. No. 74] must be **GRANTED**.

THEREFORE, Defendant Allbaugh's motion to dismiss [Dkt. No. 72] is **GRANTED** for Plaintiff's failure to demonstrate Allbaugh personally participated in the alleged constitutional violations.  This dismissal shall count as a **"STRIKE" or "PRIOR OCCASION"** pursuant to 28 U.S.C. § 1915(g).  Defendants James Yates, Ernesto Martinez, Mark Gentry, FNU A. Perez, Terry Underwood, Glenn Robinson, Brandi Sipes, Key Key, FNU D. Berry, FNU Earnest, Keith Brown, FNU Bailey, and FNU Peltier's motion to dismiss [Dkt. No. 74] is **GRANTED** for Plaintiff's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED** this 26th day of February 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

20